THE CITY OF HIGHLAND PARK, Plaintiff-Appellee, *v.* HARRY R. BLOCK, Defendant-Appellant.

Second District No. 76-46

Opinion filed May 2, 1977.

242

Lionel I. Brazen and Manuel Rosenstein, both of Chicago, for appellant.

Raymond Carlson, of Rosing & Carlson, of Waukegan, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

In a jury trial the defendant, Harry R. Block, was convicted of driving while under the influence of intoxicating liquor in violation of chapter 71, section 71.105 of the City of Highland Park ordinances. He was fined $25.

In this appeal the defendant has raised eight issues. For the purposes of convenience they are itemized as follows:

1. Whether the defendant who was driving while intoxicated on a private driveway of a private residence could be convicted under the city ordinance where there was no enabling ordinance governing traffic on

private driveways, it being contended that by virtue of the Illinois Vehicle Code traffic regulations over private driveways or private streets may be promulgated only upon the written request of the owners thereof.

2. Whether proper foundation was laid for the admission of the results of a breathalyzer machine test.

3. Whether the trial court improperly limited cross-examination of one of the city's witnesses.

4. Whether a voluntary and alleged prejudicial comment by a witness for the City of Highland Park constituted reversible error.

5. Whether there was a violation of the *Miranda* rule where the defendant requested the service of a lawyer and the police officer administered a "performance test" before the lawyer was available.

6. Whether the trial court's remarks directed to the defense attorney were disparaging and sufficiently gross to deny defendant a fair trial.

7. Whether the trial court erred in refusing to allow defense counsel to rehabilitate the defendant's witness after cross-examination tended to show the witness was biased.

8. Whether the defendant received a fair trial under the United States and Illinois constitutions.

The principal contention of the defendant in this appeal appears to be that the offense of driving while intoxicated may not be committed on private property. As a part of this contention defendant cites section 11—209.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—209.1). While it is true that section 11—209.1 deals with the regulation of traffic upon private roads and further provides that such regulation may be adopted upon the written request of the owners of the private property involved, we find that the same does not apply factually to the situation before us. The City of Highland Park's ordinance provides, in pertinent part:

> "No person who is under the influence of intoxicating liquor may drive or be in actual physical control of any vehicle within the City of Highland Park."

This wording parallels that used in section 11—501)a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(a)), which reads:

> "No person who is under the influence of intoxicating liquor may drive or be in actual physical control of any vehicle within this State."

Two other sections of the Illinois Vehicle Code are also relevant to the issue presented herein. Section 11—207 (Ill. Rev. Stat. 1973, ch. 95½, par. 11—207) states in pertinent part:

> "The provisions of this Chapter shall be applicable and uniform throughout this State and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce

any ordinance rule or regulation in conflict with the provisions of this Chapter unless expressly authorized herein."

The pertinent part of section 11—201 (Ill. Rev. Stat. 1973, ch. 95½, par. 11—201) further provides:

"2. The provisions of Articles IV and V of this Chapter shall apply upon highways and *elsewhere throughout the State.*" (Emphasis added.)

Section 11—501(a) is part of article V, mentioned in section 11—201, and is clearly applicable throughout the entire State of Illinois. This issue was considered, in part, by this court in *People v. Erickson* (1969), 108 Ill. App. 2d 142, 144, 246 N.E.2d 457, in which we held that a defendant could be convicted for driving while intoxicated upon a privately owned parking lot. In that case we held that the words "elsewhere throughout the State" appearing in the predecessor of section 11—201 included such a semipublic place. This issue and the *Erickson* case were further considered in *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239. In *Guynn* the question presented was whether the offense of driving while intoxicated could be committed on purely private property. The court there cited our decision in *People v. Erickson* and went on to state that:

"We conclude the words 'elsewhere throughout the State' encompass all areas of the State, public or private. While this issue is one of first impression in Illinois, in reaching this conclusion, we find support in the courts of other States where the statutory language is identical. [Citations.]" 33 Ill. App. 3d 736, 739, 338 N.E.2d 239, 241.

■■ ■ The defendant herein does not contend that the City of Highland Park was without any authority to prohibit driving while intoxicated within the city limits, and under the authority of section 11—207 the city could not exempt any portion of such territory without enacting an ordinance contrary to section 11—501)a). Thus, we conclude that section 11—209.1 of the Illinois Vehicle Code was intended to apply solely to traffic regulations which were not already in force throughout all areas of the State. The ordinance in question was valid and properly applied in the instant case.

We turn next to the contention of the defendant that no proper foundation was presented for the admission into evidence of the results of the breathalyzer test, as the officer administering the test "gave no clear-cut or affirmative testimony unequivocal in nature to establish compliance with the statutory law governing the administration of breathalyzer tests." Section 11—501(d) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(d)), provides in part:

"Chemical analysis of the person's blood or breath to be

considered valid under this Section must be performed according to uniform standards adopted by the State Department of Public Health * * *."

The officer testified in response to inquiry as to his knowledge of the rules and regulations of the Department of Public Health regarding the administration of these tests that "It is my understanding that our standards parallel the standards of the Department of Public Health." In response to the inquiry as to whether he had further knowledge of those standards, he replied, "Other than they are the same standards as the ones set up by our department." Unfortunately, no exhibits have been furnished this court. The record is not clear as to whether the State's standards and the Highland Park standards were introduced into evidence. A somewhat similar situation to this is found in *People v. Clifton* (1973), 11 Ill. App. 3d 11, 296 N.E.2d 48. Defense counsel in that case objected to the admission into evidence of the breathalyzer test on the ground there was no foundation proof that the test had been performed in accordance with the uniform standards of the Department of Public Health as required by the statute. The officer in that case testified he did not know what the "uniform standards" were. The court held that evidence of the breathalyzer test was therefore improperly admitted. However, the court there found that inasmuch as it was a bench trial it was presumed that the judge considered only competent evidence. In the dissent to *Clifton* Justice Stouder took issue with this finding and stated:

"Were incompetent evidence of a breathalyzer test presented in a trial before a jury, there is little doubt that such evidence would result in reversible error, and I seen no reason for believing other than that the evidence had a similar prejudicial effect in this case." (11 Ill. App. 3d 112, 115, 296 N.E.2d 48, 51.)

See also *People v. Winfield* (1975), 30 Ill. App. 3d 668, 332 N.E.2d 634, where the court again considered whether there was compliance with the standards relative to the administration of the breathalyzer test. The court in *Winfield* stated:

"Without considering the evidence of the breath tests, the testimony of the two witnesses describing defendant's behavior at the scene of the accident would be sufficient to sustain defendant's conviction." 30 Ill. App. 3d 668, 671, 332 N.E.2d 634, 637.

■■ The question then arises as to whether or not there was sufficient compliance with the standards with relation to the knowledge of the administrating officer and, if not, was the therefore erroneous admission of the results of the breathalyzer in a jury trial reversible error. Under the facts of this case, disregarding the admission of the results of the breathalyzer test, it is impossible to see how the jury could have done

otherwise than to return a verdict of guilty. We are constrained to believe that the city should have introduced evidence of the knowledge and compliance of the breathalyzer operator with the Illinois standards promulgated for the administration of the breathalyzer test. However, we see no useful purpose in reversing this case where the evidence of defendant's guilt is overwhelming. Defendant drove his motor vehicle into the driveway of a Mrs. Ware and proceeded to hit a stone wall. He backed up into some evergreens and proceeded to hit the stone wall a second time. When Mrs. Ware, aroused from her home by the crash, confronted the defendant in his motor vehicle she noted the strong odor of alcohol on him. In substance she stated that he was in no condition to drive and asked him to remain in the car until she called the police. When the police arrived the defendant was unable to find his driver's license and asked for assistance from the policeman in doing so; he had to be assisted from his car and, as he was being patted down, he urinated in his clothing. This was observed by both policemen. Both officers testified that he was under the influence of intoxicating liquor and that he had to be assisted into the police station and that he failed certain physical tests, one of which consisted of standing with his arms outstretched, during which he fell backward into the arms of one of the policemen. When the finger-to-nose test was administered he was unable to reach his nose. The defendant himself testified that he had three scotches at the party and that he was not intoxicated. In response to inquiries by the policemen at the scene, he stated that he had not been injured. At the trial, however, he testified that his head was struck when he twice hit the stone wall at the Ware property and he was dazed and that he did not understand exactly what he was doing. Under this factual situation, it is impossible to see how the jury could have arrived at any other verdict than that the defendant was under the influence of intoxicating liquor.

■■ The next contention of the defendant is that the court erred in not allowing defense counsel to cross-examine the police officer who administered the breathalyzer test. Specifically, the defense examination sought to determine from this officer the volume of the ampoules used, the contents of the ampoules, the length of time it takes for alcohol to be absorbed in a person's body, how long it takes for a drink of liquor to be dissipated from the body and what standardization or simulation tests were. The trial court found that these questions were improper, in substance finding that the operator was not a toxicologist and had been duly certified by the State as qualified to administer the test using the breathalyzer. The trial court further found that it was a question of fact for the trial judge to determine the competency of the officer in question. With this we agree. See *People v. Krueger* (1968), 99 Ill. App. 2d 431, 241 N.E.2d 707, and *People v. Harges* (1967), 87 Ill. App. 2d 376, 231 N.E.2d

650, in which each court held that the competency of an officer to testify as an expert witness as to the operation of the breathalyzer was a question of fact for the trial judge and a matter within his discretion. We find the court did not err in restricting the cross-examination of this witness. The physiological and toxiological questions were not proper or required.

■■ Defendant next objects that a statement of Mrs. Ware who observed the defendant after he twice struck her wall was improper. This statement is:

> "My opinion was that he had been drinking considerably. I would never let him drive. I was scared to death that he would have an accident someplace else."

Defendant contends the last two sentences constitute a prejudicial remark on the part of Mrs. Ware. While it was volunteered, we do not believe this constituted reversible error. She further testified that she could smell liquor on his breath, that he had difficulty in opening the door to his car and getting out of the car. She was entitled to give her opinion as to the sobriety of the defendant and we do not believe that, in view of the overwhelming evidence of intoxication, this evidence could be said to be prejudicial to defendant.

■■ Defendant next contends that the *Miranda* rule was violated by the admission of the testimony of the police officer regarding the results of an in-custody interrogation of defendant and the performance tests given after the *Miranda* warnings were read to him and after he had stated he wanted to call his lawyer but before the lawyer arrived.

In *People v. Mulack* (1968), 40 Ill. 2d 429, 240 N.E.2d 633, the defendant was arrested for driving while intoxicated and convicted. At the trial the trial judge excluded the statements made by the defendant and admitted the results of the breathalyzer tests and performance tests where the defendant had not been given the *Miranda* warnings. On appeal the Illinois Supreme Court, relying on *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, concluded that:

> "These cases further held that the gathering of this type of evidence [physical evidence] is not a critical stage in the proceeding entitling an accused to the right to counsel so that it is not a sixth amendment violation.
>
> Most State courts presented with the problem have adopted the view that *Miranda* warnings apply only to 'testimonial' evidence and not 'physical' evidence. [Citations.] We are of the opinion that this is a sound view and it is adopted." (40 Ill. 2d 429, 432, 240 N.E.2d 633, 635.)

We therefore find that the trial court did not err in the admission of the results from the performance tests.

■■ With regard to the statements made by defendant, we fail to see how the facts that defendant had drunk two or three scotch and waters earlier that evening or had been driving his car at the time of the accident are prejudicial to his case. We note that defendant testified to both facts in court himself. We further note that defendant neither objected to the testimony of Officer Rottman nor included this in his post-trial motion. We therefore find that at most the admission of the statements was harmless error which was waived by the defendant. *People v. Haugh* (1975), 27 Ill. App. 3d 710, 327 N.E.2d 292, and *People v. Krueger.*

■■ Defendant objects next to the disparaging comments allegedly made by the trial judge. We have examined the same and find no error in this regard. We further find that the trial court did, in fact, make similar statements at times to the attorney for the City of Highland Park. We do not feel any prejudice resulted from these statements which, upon occasion, we find to be justifiable.

■■ Defendant next objects to the question propounded upon cross-examination by the city attorney wherein he asked a witness for the defendant whether or not he had been a close friend of the defendant for a long time. Upon re-direct examination by defense counsel, counsel stated: "What you have told here is the truth, is it not?" This statement is improper and the court's instruction to the jury to "disregard the testimony of counsel," while not in proper form, was not error. We fail to see how defense counsel was seeking to rehabilitate the witness by asking a question as to whether his witness told the truth. It is obvious and presumed that when an attorney places a witness on the stand he will tell the truth and it is not necessary to ask him whether or not he did so.

Finally, defendant contends that the cumulative effect of the alleged errors denied him a fair trial. We do not agree. While defendant's trial was not error free, it was fair, and that is all he was entitled to. *People v. Viser* (1975), 62 Ill. 2d 568, 584, 343 N.E.2d 903, 912; *People v. Rogers* (1974), 23 Ill. App. 3d 115, 124, 318 N.E.2d 715, 722.

Having reviewed all of the above contentions of the defendant and having found no reversible error we affirm the judgment of the trial court.

Judgment affirmed.

RECHENMACHER, P. J., and BOYLE, J., concur.