THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DAVID F. EAVES, Defendant-Appellee.

Third District No. 3—87—0519

Opinion filed September 28, 1988.

STOUDER, P.J., dissenting.

Samuel Naylor VI, State's Attorney, of Carthage (Gerald P. Ursini, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Albert V. Ancelet, of Capps, Ancelet & Stoverink, of Carthage, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Defendant David F. Eaves was arrested for driving under the influence of alcoholic liquor (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)) on May 9, 1987, when he was found asleep behind the wheel of his automobile, which was parked in a private lot with the keys in the ignition, the headlamps on and the engine running. Officer Oral K. Lawrence of the Carthage police department had been called to the scene by a security guard for Robert Morris College, on whose lot

defendant's car was parked. Lawrence advised defendant orally and in writing of the warning for statutory summary suspension of drivers' licenses pursuant to section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1). Defendant agreed to submit to the breathalyzer test. The results indicated that defendant's blood-alcohol concentration was .14.

Defendant was formally charged with DUI in two counts. (Ill. Rev. Stat. 1985, ch. 95½, pars. 11—501(a)(1), (a)(2).) Defendant pleaded not guilty and requested a hearing pursuant to section 2—118.1 (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1) on the summary suspension. On June 23, 1987, the matter was heard by the circuit court of Hancock County, and the court entered an order rescinding the statutory summary suspension of defendant's driver's license. The court ruled that the implied consent and summary suspension statute did not apply because defendant's vehicle was not "upon the public highways." *People v. Kissel* (1986), 150 Ill. App. 3d 283, 501 N.E.2d 963.

The court having thus disposed of the summary suspension aspects of the case, the matter proceeded to prosecution of the DUI charge. Defendant moved to suppress the results of the breathalyzer test on the ground that his consent was given involuntarily because the arresting officer failed to inform him that the implied consent/statutory summary suspension provisions do not apply to vehicles parked on private property. Defendant testified that he agreed to take the breathalyzer test because of the implied consent warnings and his understanding that if he refused to take the test, his license would be suspended for six months. Further, it was established that Officer Lawrence knew when he read the warnings to defendant that they did not apply to vehicles on private property. Lawrence testified that he made no promises and did not threaten or intimidate defendant into taking the test. He merely read the warnings and asked defendant whether he would take it. At the conclusion of the hearing, the court found that defendant's consent was not voluntary because the arresting officer did not inform defendant that he did not have to take the breathalyzer test and that defendant's license would not be suspended for refusing to take the test. On this basis the court entered its order suppressing the evidence as requested.

The State has perfected its appeal to this court pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)). In this case we are are concerned only with whether the trial court properly suppressed the breathalyzer test results for purposes of the prosecution of defendant's DUI charge. The trial court's implied consent ruling is not challenged in this appeal.

For reasons that are not clear, neither party has chosen to direct our attention to recent precedent which we find particularly relevant to the suppression issue before us. In *Village of Algonquin v. Ford* (1986), 145 Ill. App. 3d 19, 21, 495 N.E.2d 595, 597, on facts similar to those before us today, the court on review held that under the current statutory scheme, "there is no prohibition against the taking of a breath-alcohol test without the consent of the donor." There, as here, defendant was found in the driver's seat of a vehicle parked on private property at an early hour of the morning with the motor running and the headlamps lit. Defendant was informed of the implied consent/summary suspension statute and she ultimately submitted to a breathalyzer test. The testimony was conflicting as to the circumstances leading up to defendant's consent; however, it was established that no threats or physical force were employed to administer the test.

The *Ford* court, relying on the Supreme Court's decision in *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, observed that a breathalyzer test is not of a testimonial nature. Ergo, rather than analyzing the suppression issue under the constraints of the fifth amendment, the court applied, as in *Schmerber*, a fourth amendment "search and seizure" analysis. Under the fourth amendment, a nonconsensual intrusion implicating defendant's interests in human dignity and privacy is permissible if "the police were justified in requiring [defendant] to submit to the blood [alcohol] test, and [if] the means and procedures employed in [giving the test] respected relevant Fourth Amendment standards of reasonableness." (*Schmerber*, 384 U.S. at 768, 16 L. Ed. 2d 918, 86 S. Ct. at 1834.) Otherwise stated, where the police have probable cause to arrest defendant and charge him with driving while under the influence of intoxicating liquor, then, given the fact that "the percentage of alcohol in the blood begins to diminish shortly after drinking stops" (*Schmerber*, 384 U.S. at 770, 16 L. Ed. 2d at 919, 86 S. Ct. at 1836), a blood-alcohol or "breathalyzer" test, which involves no appreciable risk, trauma or pain, may be administered promptly and without a warrant.

■ In this case, as in *Ford*, we find that the arresting officer had reasonable grounds to initiate the investigation which culminated in the breathalyzer test. Here, the police were called to the parking lot by a campus security guard. From the record on appeal it appears that when Officer Lawrence arrived at the scene he found defendant passed out in his car with the headlamps on and the motor running. The record is silent as to what signs of intoxication the officer noticed prior to advising defendant of the implied consent statute and charging him with driving under the influence of alcohol. Although the issue of prob-

able cause does not appear to have been raised in the trial court, the law is clear that probable cause determinations in these cases are not to be unduly technical. Rather, as stated in *Ford*, "[the courts] are to deal with probabilities." *Ford*, 145 Ill. App. 3d at 22, 495 N.E.2d at 598. See also *People v. Barlow* (1987), 163 Ill. App. 3d 281, 516 N.E.2d 982 (officer who was called to the scene of defendant's parked truck and found defendant asleep behind steering wheel at 12:20 a.m. had reasonable grounds to open vehicle door to determine whether defendant needed medical attention and to proceed with investigation which led to DUI charge).

■■ Both parties to this appeal have focused on the voluntariness of defendant's consent and have presented arguments citing *People v. Kissel*. We have reviewed *Kissel* and find that it is only marginally relevant for purposes of this appeal. The primary issue in *Kissel* was whether the implied consent statute applied when there was no evidence that the defendant was driving or was in control of a vehicle on a public highway prior to being arrested on private property. The court, after reviewing the statute and construing the legislative intent, concluded that the statute did not apply under such circumstances.

In *Kissel* the court went on, however, to address the State's further argument that the trial court erred in suppressing the results of defendant Kissel's breathalyzer test. The State suggested in *Kissel* that the trial court should have conducted an evidentiary hearing as to the voluntariness of Kissel's consent before deciding the suppression issue. The court on appeal agreed, without further comment. (*Kissel*, 150 Ill. App. 3d at 287, 501 N.E.2d at 965.) Of particular note is the fact that the *Kissel* court made no mention of *Ford*, decided just six months earlier by the same district of the Illinois Appellate Court.

In *Ford*, the court considered the ancillary question of whether defendant's blood-alcohol test results should be suppressed because she did not receive *Miranda* warnings before taking the test. The court's analysis, however, clearly focused on whether a consent, voluntary or otherwise, was required before the test results could be admitted in defendant's trial for the DUI offense. Concluding on the basis of *Schmerber* that consent was not required where the police had probable cause, the *Ford* court reversed the order of suppression.

In *Ford*, as here, defendant admitted that no threats, physical force or other coercion—other than the advice concerning the implied consent/summary suspension statute—had been applied by law enforcement personnel so as to render the taking of the test an unreasonable search for fourth amendment purposes. The court's reasoning in *Ford* is sound and we can perceive of no reason to depart from the rule

there stated for purposes of this appeal. Accordingly, we find that the trial court erred in accepting defendant's position that, lacking a free, knowing and voluntary consent, the State is precluded from introducing into evidence the results of defendant's breathalyzer test in his trial for driving under the influence of alcohol. We reverse the order of the circuit court of Hancock County and remand this cause for further proceedings.

Reversed and remanded for further proceedings consistent with this opinion.

WOMBACHER, J., concurs.

PRESIDING JUSTICE STOUDER, dissenting:
I respectfully disagree with the result reached by my colleagues. I believe the majority opinion errs in its failure to address the State's arguments in this appeal and in its reliance on *Village of Algonquin v. Ford* (1986), 145 Ill. App. 3d 19, 495 N.E.2d 595. Considering the facts and proceedings of this case, the decision of the trial court should have been affirmed.

The State presents two arguments. First, it argues that the implied consent warnings were properly given in spite of the fact that Eaves was found in a private parking lot. This argument is contrary to the position it took at the rescission hearing earlier in this case. The record indicates that prior to the hearing on the motion to suppress, the trial court entered an order rescinding the summary suspension of Eaves' license. The order was the result of the State's stipulation that the implied consent warnings were not properly administered to Eaves because he was found in a private parking lot and not on a public highway as the implied consent statute so requires. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1.) The State never appealed from that order. Indeed, an appeal may have been unsuccessful, considering that the State stipulated to the order. (See *Alan Drey Co. v. Generation, Inc.* (1974), 22 Ill. App. 3d 611, 617, 317 N.E.2d 673, 678-79 (holding that a party cannot on appeal urge that the trial court erred in matters to which that party has stipulated and acquiesced).) The trial court's order at the rescission hearing represents a binding judgment, and the State is estopped from now asserting a position contrary to that judgment. (*Blair v. Bartelmay* (1986), 151 Ill. App. 3d 17, 19-21, 502 N.E.2d 859, 861-62.) I think that if the State believed the implied consent warnings to have been properly given, it should not have stipulated otherwise and/or should have appealed from the order. Accord-

ingly, I believe that any issue relating to the propriety of the administration of the implied consent warnings is not properly before this court. I would have held that the State is estopped from asserting that the implied consent warnings were properly given.

Next, the State argues that if the warnings were not properly given, the cause should be remanded to determine whether Eaves' consent to take the breathalyzer test was voluntary. Such a remand is unnecessary. The trial court has already ruled that the results of the test are inadmissible because the officer improperly administered the implied consent warnings to Eaves. The trial court noted that the officer, knowing that the implied consent warnings were inapplicable to Eaves, nevertheless administered the warnings. The officer did not tell Eaves that he did not have to take the test. Eaves testified that he took the test because he understood that if he refused his license would be suspended for six months. I think that these facts provided the trial court with a sufficient basis to conclude that the breathalyzer test results are inadmissible in the DUI prosecution.

If the State had urged at the rescission hearing and in the DUI prosecution that the officer was justified in his administration of the implied consent warnings, then the trial court could not have suppressed the evidence under the authority of *People v. Foster* (1988), 170 Ill. App. 3d 306, 524 N.E.2d 681, and *People v. Wingren* (1988), 167 Ill. App. 3d 313, 521 N.E.2d 130. Both cases hold that officers may administer implied consent warnings to a person found on private lots or roads where there is evidence to suggest that the person had been driving under the influence on a public highway. (*Foster*, 170 Ill. App. 3d at 311, 524 N.E.2d at 684-85; *Wingren*, 167 Ill. App. 3d at 323, 521 N.E.2d at 136-37.) As I have mentioned above, however, the State is estopped from asserting such a position now, and we can only decide the justiciable issues before us.

Unfortunately, the majority opinion has undertaken to decide this case on a different basis. For its authority, the majority relies exclusively on *Village of Algonquin v. Ford* (1986), 145 Ill. App. 3d 19, 495 N.E.2d 595. I must note that nowhere in either the State's or the defendant's arguments exists any reference to the *Ford* case. This is most likely because the *Ford* case has little applicability here, since this case does not involve issues relating to *Miranda* warnings and consent to a breathalyzer test. Once again, we have a departure from appropriate appellate procedure. Since neither the parties nor the trial court addressed such an issue, it should be considered to have been waived for purposes of this appeal.

The court in *Ford* addressed the issue of whether the failure to

give *Miranda* warnings prior to the administration of a breathalyzer test rendered the defendant's consent to the test involuntary. (*Ford,* 145 Ill. App. 3d at 22-23, 495 N.E.2d at 596-98.) At the outset of its opinion the court states that "the trial court granted the motion to suppress because *Miranda* warnings were not given prior to the test." (145 Ill. App. 3d at 19, 495 N.E.2d at 596.) The court then begins its analysis with cases relating to admissibility of breath-alcohol results in cases where *Miranda* warnings have not been given. (145 Ill. App. 3d at 21-22, 495 N.E.2d at 597.) The court finally concludes as follows: "Here the trial court found that the failure to give the *Miranda* warnings made the consent to the test involuntary. As we have ruled above, that finding is in error; \*\*\*" 145 Ill. App. 3d at 23, 495 N.E.2d at 598.

My reading of the *Ford* case persuades me that it stands for the proposition that the failure to give *Miranda* warnings prior to the administration of a breathalyzer test does not, by itself, render the defendant's consent to the test involuntary. My reading also persuades me that *Ford* is at best only remotely related to this case. Notwithstanding the narrowness of the *Ford* case and notwithstanding the fact that the giving or failure to give *Miranda* warnings is a question not addressed by either the trial court or the parties at trial or on appeal, the majority opinion relies exclusively on the *Ford* case. To compound the confusion, the majority opinion reads *Ford* to stand for the proposition that the defendant's consent is not required to take a breathalyzer test if the arresting officer has "reasonable grounds to initiate the investigation." (174 Ill. App. 3d at 913.) Such an interpretation not only muddles the holding of *Ford* but also confounds the purpose of the implied consent statute, which is to give the person a choice as to whether to take or refuse the breathalyzer test. That the holding of the *Ford* case is narrowly tailored to address the *Miranda*-related issue is evidenced by the Second District's failure to rely on *Ford* in subsequent identical cases. (See *People v. Foster* (1988), 170 Ill. App. 3d 306, 524 N.E.2d 681; *People v. Wingren* (1988), 167 Ill. App. 3d 313, 521 N.E.2d 130.) Accordingly, I think that the majority opinion stretches unreasonably the holding of the *Ford* case. Its reliance on that case is overmeasured.

In sum, I believe that on the basis of the claims before it the trial court was justified in suppressing the evidence. Its decision should be affirmed.